UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN AIR INITIATIVE, INC.<br>310 N 1st Street<br>Colwich, KS 67030<br><br>and<br><br>ENERGY FUTURE COALITION<br>1750 Pennsylvania Avenue, NW<br>Suite 300<br>Washington, DC 20006<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL<br>PROTECTION AGENCY<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460<br><br>*Defendant*. | Civil Action No. 15-1333 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Energy Future Coalition and Urban Air Initiative, Inc. bring this action against Defendant United States Environmental Protection Agency to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). As grounds therefor, Plaintiffs allege as follows:

1

## JURISIDICTION AND VENUE

1. This Court has jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B), because this action is brought in the District of Columbia, and pursuant to 28 U.S.C. § 1331, because the resolution of disputes under FOIA presents a federal question.

2. Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3. Plaintiff Urban Air Initiative, Inc. ("UAI") is a social welfare organization dedicated to educating the public about the health threats posed by domestic use of petroleum-based fuels, and to taking positive steps to reduce the threat to public health by encouraging a change in the additives used in such fuels.

4. Plaintiff Energy Future Coalition ("EFC") is an unincorporated initiative of the Better World Fund, which is in turn a nonprofit publicly supported organization. EFC's purpose is to identify and advance pragmatic solutions to energy and environmental policy challenges that can achieve broad-based bipartisan support in the public interest.

5. Defendant United States Environmental Protection Agency ("EPA") is a federal agency headquartered in Washington, DC whose stated mission is to "protect human health and the environment." EPA has possession, custody, and control of the records Plaintiffs seek.

## STATEMENT OF FACTS

### Plaintiff's FOIA Request

6. The FOIA request at issue in this case concerns the EPAct/V2/E-89 Tier 2 Gasoline Fuel Effects Study, known as the "EPAct study," which was conducted by EPA with the assistance of consultants from Chevron, Southwest Research Institute, and the Coordinating Research Council—a non-profit organization supported by the American Petroleum Institute and

automobile manufacturers. As revised on April 2, 2015, Plaintiffs requested the following records:

    a.     Work Assignment 1-08
    b.     Work Assignment 3-02
    c.     Contract EP-C-07-028
    d.     All records created, received and/or maintained by the Environmental Protection Agency (including, but not limited to, documents created by or received from Southwest Research Institute, Coordinating Research Council, other contractors, and their employees), that pertain to the "design phase" of the [EPAct study] and any of the following topics:

        1.     re-design of fuel matrices
        2.     fuel 26 as identified in Fuel Matrix Designs #4, and fuel 26 as identified in Fuel Matrix Design #5 (fuel 23 as identified in Fuel Matrix Design #4)
        3.     fuel 27 as identified in Fuel Matrix Designs #4, and fuel 27 as identified in Fuel Matrix Design #5 (fuel 24 as identified in Fuel Matrix Design #4)
        4.     fuel 28 as identified in Fuel Matrix Designs #4, and fuel 28 as identified in Fuel Matrix Design #5 (fuel 25 as identified in Fuel Matrix Design #4)
        5.     fuel 30 as identified in Fuel Matrix Design #5
        6.     fuel 31 as identified in Fuel Matrix Design #5
        7.     T50
        8.     "a problem in blending the fuels at ETOH=15%" (E15)
        9.     CRC E-67
        10.     CRC E-74b
        11.     Southwest Research Institute (SwRI)
        12.     Coordinating Research Council (CRC)
        13.     Lubrizol Corporation
        14.     Haltermann Solutions
        15.     Rafal Sobotowski
        16.     Richard Gunst
        17.     James (Jim) Uihlein
        18.     Chevron
        19.     "Quality Management Plan" and "Quality Assurance Project Plan"
        20.     Science Advisory Board

Exhibit J (footnotes omitted, renumbered to omit retracted items).

## The EPAct Study and the MOVES2014 Model

    7. Plaintiffs have an interest in the EPAct study because it was the basis for erroneous emissions factors in EPA's new vehicular emissions model, MOVES2014, that will result in increased air pollution. In particular, the MOVES2014 model projects that increasing the

concentration of ethanol in gasoline contributes to increased emissions of various pollutants, including pollutants governed by EPA's National Ambient Air Quality Standards. But in reality, ethanol *reduces* emissions of these pollutants. *See* Exhibit A, at 55-57 (Brief for the Petitioners, *Kansas v. EPA*, No. 14-1268 (filed July 2, 2015)).

    8.   The MOVES2014 model's erroneous emissions estimates are a direct result of the composition of the EPAct study's unrealistic test fuels. Each test fuel was designed around five arbitrarily fixed parameters, and those arbitrary parameters were achieved by loading higher ethanol blends with high-boiling-point hydrocarbons to offset ethanol's pollution-reducing qualities. *See id.* at 15-19, 49-52. The EPAct study erroneously blamed ethanol for the resulting increase in toxic emissions. *See id.* at 19-20.

    9.   In its Official Release of MOVES2014, EPA requires the States to use MOVES2014 in their State Implementation Plans to demonstrate how they intend to comply with the National Ambient Air Quality Standards. *Official Release of the MOVES2014 Motor Vehicle Emissions Model for SIPs and Transportation Conformity*, 79 Fed. Reg. 60343 (Oct. 7, 2014). The EPAct study's erroneous results, as incorporated in the MOVES2014 model, are therefore contributing to increased air pollution by encouraging state policies that limit the use of ethanol in fuel. *See* Exhibit A, at 26-27.

    10.  Together with the States of Kansas and Nebraska, Plaintiffs petitioned for judicial review of EPA's MOVES2014 model on the basis of, among other things, pollution modeling errors that are the direct result of defects in the EPAct study's design. *See id.* at 47-55.

    11.  Because EPA has failed to disclose the records Plaintiffs seek, Plaintiffs were forced to file an opening brief with few specific details about the unusual circumstances surrounding the design of the EPAct study. These circumstances include several unexplained alterations in the

study's design, *see id.* at 48, and EPA's decision to retain a consultant from Chevron to design the EPAct study's test fuels, *see id.* at 16, even though Chevron manufactures and sells gasoline and the aromatic hydrocarbons in it that compete with ethanol as rival sources of octane. Without the records they seek, Plaintiffs can only speculate about the motives behind these choices and the EPAct study's resulting design.

12. Plaintiffs expect EPA to rely on its scientific expertise in defending the EPAct study's design. Records concerning the agency's reliance on outside consultants from the oil industry will be directly relevant to rebutting the agency's claimed expertise. *See* Exhibit A, at 48 n.17. But publicly available records contain scant information about the extent of the contractors' involvement. *See* Exhibit B, at A-8 (EPAct/V2/E-89: Assessing the Effect of Five Gasoline Properties on Exhaust Emissions from Light-Duty Vehicles Certified to Tier 2 Standards: Final Report on Program Design, Appendix A: Re-Design of Fuel Matrices for EPAct Program, at A-8 (Apr. 2013)); Exhibit C, at 26 (EPAct/V2/E-89: Assessing the Effect of Five Gasoline Properties on Exhaust Emissions from Light-Duty Vehicles Certified to Tier 2 Standards: Final Report on Program Design and Data Collection). EPA's failure to disclose relevant documents therefore deprives Plaintiffs of important and time-sensitive information that they need to fully brief and argue their challenge to the MOVES2014 model.

13. Petitioners' Reply Brief is due on October 14, 2015. Exhibit D (Briefing Order, *Kansas v. EPA*, No. 14-1268 (June 1, 2015)).

### EPA's Failure of Due Diligence

14. On February 9, 2015, Plaintiffs submitted to EPA a FOIA request seeking certain categories of records relating to the EPAct study. Exhibit E.

15. On March 9, 2015, EPA responded with a letter estimating "83,000 potentially responsive records" and an estimated cost of $24,000. Exhibit F. The letter encouraged Plaintiffs to reduce the scope of their request. *Id.*

16. On March 11, 2015, Plaintiffs proposed to reduce the scope of their request by striking eight categories of records—including documents relating to Southwest Research Institute—and revising 6 others to be more specific. Exhibit G.

17. On March 18, 2015, EPA said it was considering Plaintiffs' suggestions and asked to discuss them during the week of March 30. Exhibit H. The parties agreed by email to a phone call on March 31. Exhibit I.

18. During the March 31 phone call, EPA employees at the Office of Transportation and Air Quality said that striking the eight categories of records that Plaintiffs had named would not significantly reduce the magnitude of the request. Instead the EPA employees suggested that Plaintiffs limit the scope of their FOIA request to the design phase of the EPAct study and narrow the request for records related to a contract and two work assignments to the documents themselves. *See* Exhibit J.

19. On April 2, 2015, Plaintiffs sent EPA a revision of their original FOIA request, narrowing it to the design phase of the EPAct study and the contract and work assignments, as EPA had requested. Exhibit J; *see supra* ¶ 6. Plaintiffs explained that their request was time-sensitive and requested that EPA promptly produce the requested documents on a rolling basis. Exhibit J.

20. On April 24, 2015, EPA responded with a letter estimating "36,000 potentially responsive records" and an estimated cost of $18,000. Exhibit K. The letter was received on April 28, 2015. *See* Exhibit L.

21. Two days later, Plaintiffs guaranteed payment of all legitimate costs. Exhibit M. In light of the "time-sensitive nature of this request and the significant amount of time that has already elapsed," Plaintiffs again asked that "EPA comply with this request expeditiously" and on a rolling basis. *Id.*

22. EPA responded on June 15, more than 50 business days after Plaintiffs submitted their revised request and more than four months after the original request. Exhibit N. Instead of producing the requested records, EPA requested to "extend the deadline" for its response until February 15, 2016—over a year after the original FOIA request was submitted. *Id.* EPA justified this delay on the ground that some responsive records would be found among "unindexed paper records," and it would take "a significant amount of time" to gather and review the requested documents. *Id.*

23. EPA also claimed that the staff members involved in responding to the FOIA request were also involved in the ongoing litigation in *Kansas v. EPA*. *Id.* At the time of EPA's letter, however, Plaintiffs had not even filed an opening brief in that case. *Cf.* Exhibit A (Opening Brief filed July 2, 2015).

24. EPA said it would be "diligently working on the request" in the meantime, and projected that its "first production w[ould] be completed by July 31, 2015"—after the due date for Plaintiffs' opening brief. Exhibit N.

25. Three days later, in a letter dated June 17, Plaintiffs responded to EPA's request to "extend the deadline." Exhibit O. Plaintiffs pointed out that EPA had already exceeded the 20- or 30-day response deadline under 5 U.S.C. § 552(a)(6) and 40 C.F.R. § 2.104. *Id.* Nevertheless, Plaintiffs offered to accommodate EPA by extending the response date for all native electronic documents to September 16, 2015, so that Plaintiffs could review them in conjunction with

EPA's Response Brief in *Kansas v. EPA*. *Id.* Plaintiffs requested that all remaining documents be produced by October 28, 2015, the due date for final briefs in *Kansas v. EPA*. *Id.*

26. On June 25, 2015, EPA replied that it was "unable to commit to final completion of this request before February 2016," due to the "magnitude and complexity of the request." Exhibit P.

27. EPA's June 25 letter revealed that it had not even begun to search for the electronic documents that Plaintiffs had indicated were their first priority. *See id.* ("[B]ecause the responsive emails are archived on a legacy EPA system, there is still considerable uncertainty about the time that will be necessary to produce and review those records.").

28. With its June 25 letter, EPA released just three documents—the contract and work assignments. EPA indicated that its letters and "interim production" were not ripe for an administrative appeal. *Id.* ("You will receive appeal rights in EPA's final response.").

29. As of the date of this complaint—six months after Plaintiffs' original FOIA request—EPA has released only those three documents out of an estimated 36,000. EPA has yet to determine which other records it intends to release, and it has yet to "determine whether [any documents] are exempt from disclosure." *Id.*

## COUNT 1

### Failure to Make a Determination in Violation of 5 U.S.C. § 552(a)(6)

30. Plaintiffs reallege paragraphs 1 through 29 as if fully stated herein.

31. Defendant is unlawfully delaying its determination on Plaintiffs' request for records under 5 U.S.C. § 552.

32. Both the Freedom of Information Act and EPA's FOIA regulations require EPA to make a "determination" with regard to a FOIA request within 20 business days under normal circumstances and within 30 business days under "unusual circumstances." 5 U.S.C.

§ 552(a)(6)(A)–(B); 40 C.F.R. § 2.104 (a), (d). At no point may an agency extend the time limit beyond 30 days. 5 U.S.C. § 552(a)(6)(B)(i). At the very latest, EPA should have made a determination on Plaintiffs' request by May 14, 2015—30 business days after Plaintiffs submitted their revised request on April 2, 2015. *See* Exhibit J.

33. To date, EPA has yet to make a "determination" regarding Plaintiffs' request. To make a determination, it is not sufficient for an agency "simply to express," as EPA has done, "a future intention to produce non-exempt documents and claim exemptions." *Citizens for Responsibility and Ethics in Washington v. FEC* (*CREW*), 711 F.3d 180, 185 (D.C. Cir. 2013). Rather, to make a determination, an agency must at least "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *CREW*, 711 F.3d at 188 (D.C. Cir. 2013). EPA has fulfilled none of these obligations.

34. EPA admits it has not yet "gather[ed] and review[ed] the documents." *Id.* In both its June 15 and June 25 letters, EPA justified its "request to extend the deadline" on the ground that it would take a significant amount of time to do just that. *See* Exhibit N ("EPA anticipates that the response will require a significant amount of EPA's time and resources to search for and appropriately examine the voluminous number of records to complete this request."); Exhibit P ("[T]here is still considerable uncertainty about the time that will be necessary to produce and review those records").

35. EPA admits it has not "determine[d] and communicate[d] the scope of the documents it intends to produce and withhold." *CREW*, 711 F.3d at 188; *see* Exhibit P ("We estimate that a voluminous amount of documents . . . will need to be reviewed to determine whether they are

responsive and whether they are exempt from disclosure."); *id.* ("[T]hey will need to be carefully reviewed to determine the confidentiality of business information"). To date, EPA has provided no "reasons for withholding any documents." *CREW*, 711 F.3d at 188.

36. EPA admits it has not "inform[ed] the requester that it can appeal" an adverse determination. *Id.* To the contrary, EPA has denied Plaintiffs a right of appeal. *See* Exhibit P ("This is an interim response and you will receive appeal rights in EPA's final response.").

37. Because EPA has not "ma[d]e a determination within the relevant statutory time period, [Plaintiffs] may file suit without exhausting administrative appeal remedies." *CREW*, 711 F.3d at 185; *see* 5 U.S.C. § 552(a)(6)(C)(i) ("Any person making a request to any agency . . . shall be deemed to have exhausted his administrative remedies . . . if the agency fails to comply with the applicable time limit provisions of [§ 552(a)(6)].").

## COUNT 2

**Failure to Promptly Make Records Available in Violation of 5 U.S.C. § 552(a)(3)**

38. Plaintiffs reallege paragraphs 1 through 37 as if fully stated herein.

39. EPA is unlawfully withholding responsive records in violation of 5 U.S.C. § 552.

40. EPA is required to "make the requested records promptly available" to Plaintiffs, 5 U.S.C. § 552(a)(3)(A), and to "exercise due diligence" in responding to Plaintiffs' request, *id.* § 552(a)(6)(C)(i), (D)(iii).

41. EPA has not promptly produced the requested documents, nor has it exercised due diligence in responding to Plaintiffs' request. In the six months since Plaintiffs filed their original request (and four months since Plaintiffs narrowed their request along the lines requested by EPA), EPA has produced only three out of an estimated 36,000 documents.

42. Plaintiffs are being irreparably harmed by EPA's unlawful failure to produce responsive records, and Plaintiffs will continue to be irreparably harmed unless EPA is compelled to fulfill its obligation under FOIA. Plaintiffs need the requested records to fully understand and contest the design of the EPAct study and EPA's collaboration with the oil industry in designing and conducting that study. *See supra* ¶ 11. Furthermore, the requested records are directly relevant to EPA's anticipated reliance on its expertise. *See supra* ¶ 12.

43. Because EPA has not made a determination within the statutory time limit, Plaintiffs are deemed to have exhausted administrative remedies. 5 U.S.C. § 552(a)(6)(C)(i); *see CREW*, 711 F.3d at 185.

44. This Court therefore "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant[s]." 5 U.S.C. § 552(a)(4)(B). If the Court determines that an "exceptional circumstance" exists, it should "supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *CREW*, 711 F.3d at 189.

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) Enter an order:

    a. Declaring that EPA has wrongfully withheld the requested records;

    b. Enjoining Defendant from continuing to delay its determination regarding Plaintiffs' request;

    c. Enjoining EPA from continuing to withhold any and all non-exempt records responsive to Plaintiffs' FOIA request;

    d. Directing EPA to conduct a search for any and all records responsive to Plaintiff's FOIA requests and to demonstrate that EPA's search methods are reasonably likely to lead to the discovery of responsive records; and

    e. Directing EPA to produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA requests and a *Vaughn* index of any responsive records withheld under claim of exemption;

(2) Maintain jurisdiction over this action until EPA complies with FOIA and all orders of this Court;

(3) Award Plaintiffs attorneys' fees and costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

(4) Grant Plaintiffs such other relief as the Court deems just and proper.

August 17, 2015

Respectfully submitted,

/s/ Adam J. White
C. Boyden Gray (D.C. Bar 122663)
Adam J. White (D.C. Bar 502007)
   *Counsel of Record*
Adam R.F. Gustafson (D.C. Bar 1010952)
Boyden Gray & Associates
1627 I Street NW, Suite 950
Washington, DC 20006
202-955-0620
adam@boydengrayassociates.com