# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| URBAN AIR INITIATIVE, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  Civil Action No. 15-1333 (ABJ) |
| | ) |
| ENVIRONMENTAL PROTECTION | ) |
| AGENCY, | ) |
| | ) |
| Defendant. | ) |

## <u>MEMORANDUM OPINION</u>

Plaintiffs Urban Air Initiative, Inc. and Energy Future Coalition sent a Freedom of Information Act ("FOIA") request to defendant Environmental Protection Agency ("EPA") on February 9, 2015, seeking records related to the EPAct/V2/E-89 Tier 2 Gasoline Fuel Effects Study, known as the EPAct Study. Compl. [Dkt. # 1] ¶¶ 6, 14. After the parties engaged in discussions narrowing plaintiffs' request and extending the deadline by which EPA had to respond, EPA provided an interim response on June 25, 2015, stating that while it was actively searching for and reviewing documents, and planned to produce them on a rolling basis, it could not even commit to be finished with the process before February of 2016. *Id.* ¶¶ 14–29.

On August 17, 2015, plaintiffs filed this lawsuit, alleging that EPA was "unlawfully delaying its determination on [p]laintiffs' request for records," Compl. ¶ 31, and "unlawfully withholding responsive records" in violation of 5 U.S.C. § 552. *Id.* ¶ 39. After completing its production of documents, defendant filed this motion for summary judgment, arguing that it has now met its obligations under FOIA. Def.'s Mot. for Summ. J. [Dkt. # 19] ("Def.'s Mot."); Mem. of Law in Supp. of Def.'s Mot. [Dkt. # 19-2] ("Def.'s Mem."). Plaintiffs opposed defendant's

motion and also filed a cross-motion for partial summary judgment, maintaining that EPA did not conduct an adequate search and that it improperly withheld responsive records pursuant to FOIA Exemption 5. Pls.' Opp. & Cross-Mot. for Partial Summ. J. [Dkt. # 21] ("Pls.' Cross-Mot."); Mem. in Supp. of Pls.' Cross-Mot. [Dkt. # 21-1] ("Pls.' Cross-Mem."). Plaintiffs are only seeking summary judgment with respect to 198 records withheld or redacted under Exemption 5's deliberative process privilege.[1] Pls.' Cross-Reply in Supp. of Pls.' Cross-Mot. [Dkt. # 34] ("Pls.' Cross-Reply") at 4–5.

Because the Court finds that defendant has failed to establish that it conducted an adequate search for records under FOIA, it will deny defendant's motion in part and remand the matter to the agency. However, the Court will grant defendant's motion in part and deny plaintiffs' motion since it has determined that EPA properly invoked Exemptions 4, 5, and 6 to withhold or redact all of the documents at issue, and it has produced all reasonably segregable information.

## BACKGROUND

### I.     Factual Background

Plaintiff Urban Air Initiative, Inc. is an organization dedicated to educating the public about the health threats posed by the use of petroleum-based fuels. Compl. ¶ 3. Energy Future Coalition is a non-profit organization that seeks to identify and advance practical solutions to energy and environmental policy challenges. *Id.* ¶ 4. This lawsuit arises out of their interest in and inquiries about the EPAct/V2/E-89 Tier 2 Gasoline Fuel Effects Study, known as the "EPAct Study," which

---

1       Plaintiffs originally sought summary judgment on two other issues – "two records redacted as partially non-responsive, and all remaining email attachments redacted as non-responsive" – but those issues are now moot. *See* Pls.' Cross-Reply at 5; Def.'s Sur-Reply [Dkt. # 36] ("Def.'s Sur-Reply"); Resp. to Court's Min. Order [Dkt. # 45]; Resp. to Court's Order [Dkt. # 48].

was jointly supported by EPA, Department of Energy, and the Coordinating Research Council ("CRC"). *Id.* ¶ 6; Decl. of Kathryn Sargeant [Dkt. # 19-3] ("Sargeant Decl.") ¶ 8.

In 2005, Congress directed EPA to produce an updated emissions model that considered the effect of individual fuel properties on emissions from vehicles. Sargeant Decl. ¶ 10. In order to create this model, which would become known as the MOVES2014 model, EPA developed the EPAct Study. *Id.* Ultimately, the MOVES2014 model included data from a range of sources, including the EPAct Study. *Id.*

During the design phase of the study, "EPA defined the scope of the study, estimated costs, determined test procedures, and selected fuel parameters and vehicles." Sargeant Decl. ¶ 13. To test vehicles on different fuels, EPA engaged Southwest Research Institute ("SwRI"). *Id.* ¶ 12. Ultimately, the study "measured emissions from a fleet of 15 test cars and trucks from the 2008 model year using twenty-seven fuel blends." *Id.* ¶ 16. EPA issued the study's final report in April 2013. *Id.* ¶ 17.

According to plaintiffs, the EPAct Study "was the basis for erroneous emissions factors" in the MOVES2014 model, which, plaintiffs claim, "will result in increased air pollution." Compl. ¶ 7. So plaintiffs, along with the states of Kansas and Nebraska, petitioned for judicial review of the MOVES2014 model, partially on the basis of "pollution modeling errors that are the direct result of defects in the EPAct study's design." *Id.* ¶ 10; *see* Ex. A to Compl. [Dkt. # 1-1].

Plaintiffs submitted a FOIA request to EPA on February 9, 2015, in order to obtain information they needed to pursue their case. Compl. ¶ 14; *see* Def.'s Statement of Material Facts as to Which There are no Genuine Issues [Dkt. # 19-1] ("Def.'s SOF") ¶ 1; Pls.' Resp. to Def.'s

SOF [Dkt. # 21-2] ("Pls.' Resp. SOF") ¶ 1;[2] Sargeant Decl. ¶ 7.  EPA's Office of Transportation

and Air Quality received the request on February 10, 2015, and confirmed receipt on February 19,

2015.  Def.'s SOF ¶ 2; Pls.' Resp. SOF ¶ 2; Ex. B to Sargeant Decl. [Dkt. # 19-4].

At defendant's urging, plaintiffs narrowed their FOIA request on March 11, 2015, to

information about specific contract and work assignments, as well as to 20 subtopics related to the

"design phase" of the EPAct study.  *See* Def.'s SOF ¶¶ 4, 7; Pls.' Resp. SOF ¶¶ 4, 7; Ex. D to

Sargeant Decl. [Dkt. # 19-4]; Ex. F. to Sargeant Decl. [Dkt. # 19-4] ("FOIA Request").  Plaintiffs

defined the "design phase" of the study as "everything that preceded the emissions testing that

resulted directly in the reported results of any phase of the EPAct study."  FOIA Request.

Defendant confirmed the parameters of the narrowed request by letter on April 24, 2015.  Def.'s

SOF ¶ 9; Pls.' Resp. SOF ¶ 9; Ex. G to Sargeant Decl. [Dkt. # 19-4].  Ultimately, plaintiffs' request

sought:

> a. Work Assignment 1-08
>
> b. Work Assignment 3-02
>
> c. Contract EP-C-07-028
>
> d. All records created, received and/or maintained by the Environmental
> Protection Agency (including, but not limited to, documents created by or
> received from Southwest Research Institute, Coordinating Research
> Council, other contractors, and their employees), that pertain to the "design
> phase of the EPAct/V2/E-89 Tier 2 Gasoline Fuel Effects Study and any of
> the following topics:

---

2       Pursuant to Local Rule 7(h), both parties submitted statements of material facts.  In support
of their cross-motion for summary judgment, plaintiffs provided a Separate Statement of Material
Facts, but it does not appear that defendant ever responded to that separate statement.  *See* Pls.'
Separate Statement of Material Facts as to Which There are no Genuine Issues [Dkt. # 21-2] ("Pls.'
SOF").  In opposition to plaintiffs' cross-motion, and reply in support of its own motion for
summary judgment, defendant provided a Second Statement of Material Facts, but it never
addresses plaintiffs' Separate Statement of Material Facts.  *See* Def.'s Second Statement of
Material Facts [Dkt. # 28-1] ("Def.'s Second SOF").  Plaintiffs do, though, respond to defendant's
Second Statement of Material Facts.  *See* Pls.' Resp. to Def.'s Second SOF [Dkt. # 34-1] ("Pls.'
Resp. Second SOF").

1. re-design of fuel matrices

2. [retracted]

3. [retracted]

4. [retracted]

5. [retracted]

6. fuel 26 as identified in Fuel Matrix Designs #4, and fuel 26 as identified in Fuel Matrix Design #5 (fuel 23 as identified in Fuel Matrix Design #4)

7. fuel 27 as identified in Fuel Matrix Designs #4, and fuel 27 as identified in Fuel Matrix Design #5 (fuel 24 as identified in Fuel Matrix Design #4)

8. fuel 28 as identified in Fuel Matrix Designs #4, and fuel 28 as identified in Fuel Matrix Design #5 (fuel 25 as identified in Fuel Matrix Design #4)

9. fuel 30 as identified in Fuel Matrix Design #5

10. fuel 31 as identified in Fuel Matrix Design #5

11. [retracted]

12. [retracted]

13. [retracted]

14. T50

15. [retracted]

16. "a problem in blending the fuels at ETOH=15%" (E15)

17. CRC E-67

18. CRC E-74b

19. Southwest Research Institute (SwRI)

20. Coordinating Research Council (CRC)

21. Lubrizol Corporation

22. Haltermann Solutions

23. Rafal Sobotowski

24. Richard Gunst

25. James (Jim) Uihlein

26. Chevron

27. "Quality Management Plan" and "Quality Assurance Project Plan"

28. Science Advisory Board

FOIA Request.

On June 15, 2015, EPA asked plaintiffs to agree to extend the deadline for the production of documents because of the "broad scope of the request" and the "significant amount of EPA's time and resources" required to complete the request. Def.'s SOF ¶ 12; Pls.' Resp. SOF ¶ 12; Ex. I to Sargeant Decl. [Dkt. # 19-4]. It projected that it would be able to complete its response to plaintiffs' request by February 15, 2016. Def.'s SOF ¶ 12; Pls.' Resp. SOF ¶ 12; Ex. I to Sargeant Decl. [Dkt. # 19-4]. Plaintiffs responded on June 17, 2015, and agreed to extend the response date for "all native electronic documents" to September 16, 2015, and for all other documents to October 28, 2015. Ex. J to Sargeant Decl. [Dkt. # 19-5]. Finally, on June 25, 2015, defendant sent a letter to plaintiffs stating that it was "unable to commit to final completion of [the] request before February 2016," but that it was "actively engaged in searching and reviewing documents and [would] be providing information to [plaintiffs] on a rolling basis." Ex. K to Sargeant Decl. [Dkt. # 19-5]. EPA maintained that this was an "interim response and [plaintiffs would] receive appeal rights in EPA's final response." *Id.* at 2. With this letter, defendant released three documents, including two work assignment records and a redacted contract. *Id.*

## II. Procedural History

Because EPA did not respond to plaintiffs' FOIA request within the statutorily-required period of time, *see* Compl. ¶¶ 15–29, 31–37; 5 U.S.C. § 552(a)(6)(A)–(C), plaintiffs filed this lawsuit on August 17, 2015. Defendant filed an answer on November 12, 2015. Answer [Dkt. # 5]. On December 11, 2015, defendant filed a status report in which it proposed a schedule of production through May 31, 2016. Def.'s Status Report & Doc. Produc. Schedule [Dkt. # 7] at 1–2. In the report, defendant stated that it had released a total of forty-three documents to plaintiffs since the filing of the complaint on three separate occasions: October 15, 2015 (nine records in full); November 5, 2015 (twenty-eight records in full and one with redactions); and November 20,

2015 (two records in full and three with redactions). *Id.* at 3; *see also* Def.'s SOF ¶ 44; Pls.' Resp. SOF ¶ 44; Ex. N to Sargeant Decl. [Dkt. # 19-5]; Ex. O to Sargeant Decl. [Dkt. # 19-5]; Ex. P to Sargeant Decl. [Dkt. # 19-5].

Plaintiffs proposed an alternative production schedule on December 15, 2015, and requested that the Court "order EPA to prioritize responsive email records, producing those documents on a rolling basis beginning immediately, and no later than January 21, 2016." Pls.' Status Report & Resp. to EPA's Doc. Produc. Schedule [Dkt. # 8] at 1–2. Because the parties could not agree on a proposed schedule, the Court referred the action to a Magistrate Judge for mediation, which was unsuccessful. Order (Dec. 21, 2015) [Dkt. # 9]; Pls.' Status Report & Renewed Proposal for FOIA Produc. Schedule [Dkt. # 10] at 1–2. Defendant continued producing documents according to its preferred schedule, and on January 7, 2016, the agency produced 684 records in full. Def.'s SOF ¶ 44; Pls.' Resp. SOF ¶ 44; Ex. Q to Def.'s Mem. [Dkt. # 19-5]. Subsequently, the Court set its own schedule for the production of the remaining documents. Min. Order (Jan. 13, 2016).

Over the course of the next six months, defendant continued to produce documents to plaintiffs on a rolling basis until it determined that it had completed processing plaintiffs' FOIA request. *See* Joint Status Report [Dkt. # 17] at 6. On January 15, 2016, defendant produced 412 records in full, 33 with redactions, and it withheld 77 records in full pursuant to FOIA Exemptions 4 and 5. Def.'s SOF ¶ 44; Pls.' Resp. SOF ¶ 44; Ex. R to Sargeant Decl. [Dkt. # 19-5]. On January 29, 2016, EPA produced 557 records in full, 57 records with redactions, and it withheld 43 records in full pursuant to FOIA Exemptions 4 and 5. Def.'s SOF ¶ 44; Pls.' Resp. SOF ¶ 44; Ex. S to Sargeant Decl. [Dkt. # 19-5]. On February 12, 2016, defendant produced 837 records in full, 24 records with redactions, and it withheld 29 records in full pursuant to FOIA Exemptions 4 and 5.

Def.'s SOF ¶ 44; Pls.' Resp. SOF ¶ 44; Ex. T to Sargeant Decl. [Dkt. # 19-5]. And on February 29, 2016, EPA produced 1,075 records in full, 149 records with redactions, and it withheld 188 records in full pursuant to FOIA Exemptions 4 and 5. Def.'s SOF ¶ 44; Pls.' Resp. SOF ¶ 44; Ex. U to Sargeant Decl. [Dkt. # 19-6].

Defendant released another 114 records in full on May 25, 2016, after certain businesses waived confidentiality, and it produced another 150 records not entitled to confidential treatment in full or in part on June 22, 2016. Def.'s Status Report [Dkt. # 16]; Ex. V to Sargeant Decl. [Dkt. # 19-6]; Ex. W to Sargeant Decl. [Dkt. # 19-6] ("Ex. W"). At this point, EPA concluded its production of records in response to plaintiffs' FOIA request. Ex. W.

On September 2, 2016, defendant filed a motion for summary judgment, arguing that it has met its obligations under FOIA. Def.'s Mem. at 1. Defendant insists that "[t]he EPA has fully responded to [p]laintiffs' request," *id.* at 2, by "produc[ing] more than 4,000 documents in full or in part, only withholding documents and information that are exempt from disclosure under 5 U.S.C. §§ 552(b)(4), (b)(5), and (b)(6)." *Id.* at 4; *see also* Ex. HH to Def.'s Mem. [Dkt. # 19-11] ("*Vaughn* index").

Plaintiffs filed a cross-motion for partial summary judgment on October 14, 2016, maintaining that EPA withheld responsive records pursuant to FOIA Exemption 5 that are not properly exempted because "[t]he deliberative process privilege does not exempt from disclosure deliberations regarding the design of a scientific study because they do not relate to any 'policy-oriented judgment.'" Pls.' Cross-Mem. at 16, quoting *Petroleum Info. Corp. v. Dep't of Interior*,

976 F.2d 1429, 1434 (D.C. Cir. 1992).[3]  Plaintiffs also opposed defendant's motion for summary

judgment, arguing that EPA's search was inadequate and that the agency has not fulfilled its

obligation to produce all reasonably segregable responsive information.  Pls.' Cross-Mem. at 28–

36.

On January 17, 2017, defendant filed an opposition to plaintiffs' cross-motion and a reply

in support of its motion for summary judgment, contending that because plaintiffs had not

challenged defendant's invocation of FOIA Exemptions 4 and 6, they had conceded their

applicability.  *See* Def.'s Reply at 3.[4]  Defendant also maintains that two of plaintiffs' categorical

---

3       A complete list of the withholdings being challenged by plaintiffs is contained within the
Declaration of James R. Conde.  Decl. of James R. Conde, Ex. 3 to Pls.' Cross-Mot. [Dkt. # 21-3]
("Conde Decl.") ¶¶ 48–61.  Defendant points out in its reply that the Conde declaration was
unsigned and merely submitted by plaintiffs' attorney.  Def.'s Opp. to Pls.' Cross-Mot. & Reply
in Supp. of Def.'s Mot. [Dkt. # 30] ("Def.'s Reply") at 2 n.2.  However, plaintiffs have since filed
a notice of errata and attached a signed copy of the declaration.  Notice of Errata [Dkt. # 33].

4       In their cross-motion, plaintiffs state that they are challenging "EPA Exemption 4 claims
for vagueness only."  Pls.' Cross-Mem. at 12 n.7.  Plaintiffs clarify that they still "seek summary
judgment to the extent EPA asserts the deliberative process privilege applies to these records," *id.*,
and they contend that the records redacted under both Exemption 4 and 5 "suffer from the same
defect" as all of the other documents withheld or redacted under Exemption 5.  *Id.* at 17 n.8.

challenges are now moot because EPA produced the challenged documents during the briefing period. *Id.* at 3–4.[5]

Plaintiffs filed a cross-reply on March 31, 2017. Pls.' Cross-Reply. Despite defendant's additional productions, plaintiffs confirm that they are seeking summary judgment on 198 records redacted under Exemption 5, two records redacted as partially non-responsive, and all remaining e-mail attachments that were not produced on the basis that they were non-responsive. *Id.* at 5.

On June 5, 2017, defendant filed a sur-reply in which it clarified that it had inadvertently failed to release the two redacted records that plaintiffs sought summary judgment on in their cross-reply. Def.'s Sur-Reply at 2. EPA rectified the issue by producing the two records in full to plaintiffs on May 25, 2017. *Id.* at 2–3; Ex. 1 to Def.'s Sur-Reply [Dkt. # 36-1]. And, in two separate filings with the Court, defendant confirmed that it has produced all e-mail attachments to responsive records that it originally withheld as non-responsive. Resp. to Court's Min. Order

---

5    On December 8, 2016, after re-reviewing its Exemption 5 withholdings for communications between EPA and outside parties, defendant produced six documents in full that had previously been withheld in part or in full. Def.'s Second SOF ¶ 24; Pls.' Resp. Second SOF ¶ 24; Def.'s Reply at 4; Pls.' Cross-Reply at 3–4; Suppl. Decl. of Kathryn Sargeant [Dkt. # 28-2] ("Sargeant Suppl. Decl.") ¶ 16; Ex. 2 to Sargeant Suppl. Decl. [Dkt. # 28-3]. Two weeks later, defendant released a total of 180 documents "in an effort to narrow the issues" that it had previously identified as non-responsive e-mail attachments; it released 149 records in full and 31 records in part, and it withheld 4 additional records in full. Def.'s Second SOF ¶ 25; Pls.' Resp. Second SOF ¶ 25; Sargeant Suppl. Decl. ¶ 17; Ex. 3 to Sargeant Suppl. Decl. [Dkt. # 28-3]. Thirty records released in part contain information withheld under Exemption 4, and one record contains information withheld under Exemption 5. Ex. 3 to Sargeant Suppl. Decl. [Dkt. # 28-3]. Three records were withheld in full pursuant to Exemption 4, and one record was withheld in full under Exemptions 4 and 5. *Id.* EPA provided plaintiffs with a supplemental *Vaughn* index for these withholdings. *See* Ex. 4 to Sargeant Suppl. Decl. [Dkt. # 28-3] ("Suppl. *Vaughn* index").

[Dkt. # 45]; Resp. to Court's Order [Dkt. # 48].[6] Therefore, the only issue remaining in plaintiffs'

motion for partial summary judgment is whether 198 records were properly withheld or redacted

as exempt under the deliberative process privilege.

Pursuant to the Court's orders on June 27, 2017, and July 6, 2017, the parties delivered a

representative sample of documents withheld under Exemption 5 to chambers for *in camera*

inspection to assist the Court in making a responsible *de novo* determination. *See Ray v. Turner*,

587 F.2d 1187, 1195 (D.C. Cir. 1978). Based on the briefs and declarations submitted by the

parties, and the Court's *in camera* review of the records, the Court will deny in part and grant in

part defendant's motion for summary judgment, and deny plaintiffs' partial motion for summary

judgment.

## STANDARD OF REVIEW

In a FOIA case, the district court reviews the agency's decisions *de novo* and "the burden

is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*,

656 F.2d 724, 738 (D.C. Cir. 1981). "[T]he vast majority of FOIA cases can be resolved on

summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

6       Plaintiffs argue that EPA has not produced all non-responsive e-mail attachments since
they can identify certain e-mail attachments in defendant's *Vaughn* index that have yet to be
produced. Reply Concerning the Court's Min. Order [Dkt. # 46]; Reply Concerning the Court's
Min. Order [Dkt. # 49]. However, EPA clarified that the identified e-mail attachments were not
produced because they are duplicates of already-produced documents. *See* Def.'s Consent Mot.
for Extension of Time [Dkt. # 47]. Moreover, EPA conducted a full review of its production of
non-duplicative, non-responsive e-mail attachments and confirmed that it has indeed produced all
of them to plaintiffs. Resp. to Court's Order [Dkt. # 48]. The Court concludes that the legal issue
concerning the production of all non-responsive e-mail attachments is moot since EPA has agreed
to produce all of the documents. The Court's Order will address the steps that must be taken to
resolve any remaining disputes concerning the agency's compliance with this obligation.

56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In the FOIA context, "the sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" in order for summary judgment to be inappropriate.  *Weisberg v. DOJ*, 627 F.2d 365, 371 n.54 (D.C. Cir. 1980), quoting *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C. Cir. 1979) (internal quotation marks omitted).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

"Summary judgment may be granted on the basis of agency affidavits" in FOIA cases, when those affidavits "contain reasonable specificity of detail rather than merely conclusory statements," and when "they are not called into question by contradictory evidence in the record or by evidence of agency bad faith."  *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215

(D.C. Cir. 2013), quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006). However, a plaintiff cannot rebut the good faith presumption afforded to an agency's supporting affidavits through "purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

Even if the nonmoving party fails to respond to the motion for summary judgment, or portions thereof, a court cannot grant the motion for the reason that it was conceded. *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). That is because the "burden is always on the movant to demonstrate why summary judgment is warranted." *Id.*, quoting *Grimes v. District of Columbia*, 794 F.3d 83, 97 (D.C. Cir. 2015) (Griffith, J., concurring). A district court "must determine for itself that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law, and then 'should state on the record the reasons for granting or denying the motion.'" *Id.* at 508–09, quoting Fed. R. Civ. P. 56(a).

## ANALYSIS

FOIA requires the release of government records upon request. Its purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."),

citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must first demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, the agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

## I.    EPA's search was inadequate.

### A.    Legal Standard

Because a fundamental principle behind FOIA "is public access to government documents," courts require "agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), citing *John Doe Agency*, 493 U.S. at 151 and *Campbell v. DOJ*, 164 F.3d 20, 28 (D.C. Cir. 1998). Therefore, an agency only "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Id.*, quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990); *see also Oglesby*, 920 F.2d at 68. Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

To demonstrate that it has performed an adequate search for responsive documents, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68 (finding summary judgment improper where agency's affidavit lacked sufficient detail). An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Id.*; *see also Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009) (finding declaration deficient where it failed to detail the types of files searched, the filing methods, and the search terms used). However, agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg*, 627 F.2d at 371; *see also Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994) (concluding that an agency affidavit must describe "what records were searched, by whom, and through what process"). Moreover, conclusory assertions about the agency's thoroughness are insufficient. *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007).

"Agency affidavits are accorded a presumption of good faith," *Safecard Servs., Inc.*, 926 F.2d at 1200, which can be rebutted with "evidence of agency bad faith," *Military Audit Project*, 656 F.2d at 738, or when "a review of the record raises substantial doubt" that certain materials were overlooked despite well-defined requests. *Valencia-Lucena*, 180 F.3d at 326, citing *Founding Church of Scientology*, 610 F.2d at 837; *see also Truitt*, 897 F.2d at 542 ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

While defendant has submitted a declaration in an attempt to meet its burden with regard to the adequacy of the search, the declaration does not inspire confidence that the agency has conducted a search that is reasonably calculated to uncover all relevant documents. Therefore, the Court will remand the case to the agency.

**B.     EPA's Search**

To describe its search for records in this case, EPA proffered the declaration of Kathryn Sargeant, the Deputy Director of the Assessment and Standards Division ("ASD") of the Office of Transportation and Air Quality ("OTAQ") and the Office of Air and Radiation ("OAR") at the EPA. Sargeant Decl. ¶ 1. Once OTAQ received the FOIA request at issue, it assigned the request to ASD because that division was responsible for designing the EPAct Study. *Id.* ¶¶ 18–19. Sargeant oversees ASD staff in responding to FOIA requests assigned to the division. *Id.* ¶ 6.

EPA initiated its search by identifying employees who were reasonably likely to be in possession of responsive records. Sargeant Decl. ¶ 26. The declaration avers that ten ASD staff members[7] were identified because "they were substantively involved in the . . . design phase of the EPAct Study, which was the subject of the FOIA request." *Id.* EPA instructed the custodians to search their electronic records on their computers, "other media," and paper files. *Id.* ¶ 28. Not only did EPA give these instructions via e-mail, but it held seven formal meetings with the custodians during which ASD staff discussed the scope of the request and how to review records. *See id.* ¶¶ 28–30.

More specifically, EPA instructed the custodians to search for responsive records in "electronic files in each employee's C: drive, network drives, thumb drives, and any documents

---

7     The following individuals were identified as custodians of potentially responsive records: Kathryn Sargeant, Paul Machiele, Christine Brunner, Aron Butler, Rich Cook, Marion Hoyer, Ed Nam, Rafal Sobotowski, Catherine Yanca, and Connie Hart. Sargeant Decl. ¶ 27.

that are attached to emails; and [] paper files in each staff member's office or file cabinets." Sargeant Decl. ¶ 31. After completing a search, the custodian was directed to upload electronic files to the share drive, and to manually scan any hard copy records. *Id.* "EPA staff members who were most familiar with the collection of the EPAct files on the EPA's network share drives were also asked to search those drives for material responsive to the FOIA request." *Id.* Further, "each custodian verified," either verbally or via e-mail, that he or she had completed the search for paper files. *Id.* ¶ 32.

Additionally, EPA's Office of Environmental Information ("OEI"), which is the agency's information technology office, searched the ten custodians' Lotus Notes e-mail boxes for responsive records. Sargeant Decl. ¶ 33. The declaration avers that EPA used Lotus Notes as its email application throughout the relevant dates responsive to the FOIA request – January 1, 2006 to March 3, 2009. *Id.* "The search request submitted to OEI included the following terms: Haltermann, Gunst, Uihlein, fuel 23, fuel 24, fuel 25, fuel 26, fuel 27, fuel 28, fuel 30, fuel 31, EPAct and v2 and E-89, T50, E15, E-67, E-74, Southwest, Institute, SwRI, CRC, council, Lubrizol, Rafal, Sobotowski, Chevron, Quality Management Plan, QMP, Quality Assurance Project Plan, QAPP, Science Advisory Board, SAB, chevron.com, swri.org, jhaltermann.com, and crcao.org." *Id.* ¶ 34.

Any records identified as a result of the searches were imported into Relativity, a computer software program used to review documents. Sargeant Decl. ¶¶ 35, 37. Ultimately, EPA's search of office electronic and paper files located approximately 4,000 electronic records, 11 binders, and 100 pages of paper files. *Id.* ¶ 36. In total, EPA produced approximately 3,980 records in full, 196 records with redactions, and 136 records withheld in full. *Id.* ¶ 49.

## C.    Adequacy of the Search

Plaintiffs challenge the adequacy of the search, arguing that EPA misinterpreted the scope of their request by restricting the search to documents generated prior to March 3, 2009.  Pls.' Cross-Mem. at 28.  Plaintiffs' request sought documents "relate[d] to the design phase" of the EPAct Study, which plaintiffs defined as "everything that preceded the emissions testing that resulted directly in the reported results of any phase of the EPAct study."  FOIA Request.

While plaintiffs did narrow their request to the design phase of the study, they contend that this phase did not end "until at least 37 weeks after March 3, when EPA settled on the vehicles to be included in the testing protocols, finalizing the designs of the emissions tests that produced the EPAct Study's results."  Pls.' Cross-Mem. at 28–29; Final Report on Program Design & Data Collection, Ex. B to Conde Decl. [Dkt. # 22-1] ("Final Report") at B-51.  Further, they maintain that EPA "was still making decisions about which fuels to test for particular pollutants, and what their parameters should be, as of March 11, 2009."  Pls.' Cross-Mem. at 29; Ex. AA to Conde Decl. [Dkt. # 22-2].  Plaintiffs also argue that the search was not reasonably calculated to uncover all relevant documents because "EPA failed to search the files of several custodians . . ., and EPA failed to search for entire categories of documents."  Pls.' Cross-Mem. at 29.

In response, EPA informed the Court that its original declaration contained an inadvertent error identifying March 3, 2009 as the search end date when the agency had actually searched for records through March 12, 2009, when EPA maintains that the design phase ended.  Def.'s Reply at 11; Sargeant Suppl. Decl. ¶ 4.  Although this clarification addresses one of plaintiffs' concerns, it does not resolve the question of whether the agency should have searched for records generated after that date.

Defendant takes the position that because some emissions tests began on March 12, 2009, that marked "the end of the 'design phase.'" Def.'s Reply at 11. Plaintiffs' narrowed request sought records pertaining to the "design phase" of the EPAct Study. *See id.* EPA chose to treat the design phase and emission test phase as distinct, and it insists that "[t]he choice of March 12, 2009 as an end date was meant to ensure that [it] captured records generated preceding the emissions testing." Def.'s Reply at 11.

But "[t]he agency [is] bound to read [the request] as drafted, not as [] agency officials . . . might wish it was drafted," *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984), and it may not narrow the scope of a FOIA request to exclude materials reasonably within the description provided by the requester. *See Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889–90, 892 (D.C. Cir. 1995) (finding the agency's search for records under Perot's name was too narrow when the search also sought information "pertaining to" Perot).

While plaintiffs clearly narrowed their request to distinguish records related to the design of the tests to be utilized from the results of the tests themselves, the request is broad enough to cover any efforts to fine tune and finalize the design of the study that may have occurred even after some initial testing had begun. *See Nation Magazine*, 71 F.3d at 890, citing *Truitt*, 897 F.2d at 544–45. EPA's search was incomplete because, even though March 12, 2009, may have marked the start of testing, it did not necessarily signal a complete end to design. This interpretation is aligned with the overall intent of the request since plaintiffs explicitly asked for documents related to a number of topics in the design phase, including the "re-design of fuel matrices." *See* FOIA Request.

The Court has additional concerns with the adequacy of EPA's search. The declaration asserts that ten custodians were "reasonably likely to be in possession of [] responsive records"

because "they were substantively involved in the . . . design phase of the EPAct Study," Sargeant Decl. ¶ 26, but it does not aver that no other custodians were likely to possess responsive documents. *See Oglesby*, 920 F.2d at 68.[8] Moreover, even though the declaration describes the systems that these custodians searched, it fails to set forth the search terms used and the type of searches that each custodian performed. *See id.* And the declaration never provides an explanation as to why "no other record system was likely to produce responsive documents." *Id.* Without this information, the Court cannot conclude that EPA's search was adequate.

With regard to OEI's search, the declaration also falls short because the search terms OEI used in and of themselves raise doubt with the Court that defendant performed an adequate search. Plaintiffs sought documentation related to a number of topics, many of which were included as search terms. *See* Sargeant Decl. ¶ 34; FOIA Request. However, some topics, such as "re-design of fuel matrices," were not included in the search in any way, and the declaration does not attempt to explain why this is the case. Moreover, the declaration states that OEI conducted a search of the Lotus Notes e-mail boxes without explaining why this was the only document location searched and without averring that "no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68.

Therefore, the Court finds that the declaration does not describe an adequate search and summary judgment for the agency is inappropriate at this time.

## II.     EPA's withholdings and redactions were justified under Exemptions 4 and 6.

Turning to the records that EPA identified and either redacted or withheld, the agency argues that it properly invoked Exemptions 4 and 6. Plaintiffs do not address this contention in

---

8       Even defendant's supplemental declaration suffers from the same omission. *See* Sargeant Suppl. Decl. ¶ 6 ("[T]he ten custodians were identified as those reasonably likely to possess responsive records due to their substantive involvement in the design of the EPAct Study.").

their opposition. Defendant urges the Court to grant summary judgment in its favor since plaintiffs "concede[] the EPA's use of these exemptions." Def.'s Reply at 3. But the Court does not believe that it may use a plaintiff's failure to respond on an issue as the sole basis to grant summary judgment on that issue in light of the D.C. Circuit's holding in *Winston & Strawn*, 843 F.3d at 507. So, the Court will make its own determination as to whether the agency's withholdings and redactions were appropriate. The Court finds, based on its review of the record, that EPA's withholdings and redactions under Exemptions 4 and 6 are justified, and will grant defendant's motion.

### A. Exemption 4

FOIA Exemption 4 prohibits disclosure of "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). The D.C. Circuit has given the terms in this exemption their "ordinary meanings," *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 38 (D.C. Cir. 2002), quoting *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983), and FOIA includes corporations in its definition of "person." 5 U.S.C. § 551(2). "Commercial" information includes "records that reveal basic commercial operations or relate to income-producing aspects of a business" as well as situations where the "provider of the information has a commercial interest in the information submitted to the agency." *Baker & Hostetler, LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006) (internal quotation marks omitted).

Whether commercial or financial information is protected turns in part on whether it was provided to the government agency voluntarily or under compulsion: if the information was disclosed voluntarily, it will be considered confidential for purposes of Exemption 4 if it is the kind of information "that would customarily not be released to the public by the person from whom

it was obtained." *Critical Mass Energy Project v. NRC*, 975 F.2d 871, 879 (D.C. Cir. 1992). However, if the business was required to submit its information, the information will be considered confidential only if disclosure would be likely to either "(1) impair the agency's ability to get information in the future or (2) cause substantial competitive harm to the entity that submitted the information." *Judicial Watch Inc. v. FDA*, 449 F.3d 141, 149 (D.C. Cir. 2006), citing *Critical Mass Energy Project*, 975 F.2d at 878. Courts generally defer to the agency's predictive judgments as to the repercussions of disclosure when evaluating the substantial competitive harm prong. *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 563 (D.C. Cir. 2010).

EPA withheld approximately forty-eight records (forty-one released with redactions, and six withheld in full) under FOIA Exemption 4. Sargeant Decl. ¶ 58. It asserts that the information withheld falls into one of three categories: "(1) data, experiences, approaches, and methodologies; (2) proprietary processes, organization of reports and analyses, facilities, and equipment; and (3) financial information." *Id.* Defendant argues that "there cannot be any dispute" that the withheld information from the previously named categories is "commercial information." Def.'s Mem. at 9–10.

EPA's declarant avers that EPA asked its sources if they were asserting any claims to potential confidential business information ("CBI") in responsive records. Sargeant Decl. ¶¶ 60–61. Once EPA received responses from the businesses, it made confidentiality determinations regarding the information. *Id.* Chevron Phillips Chemical Company ("Chevron Phillips") and Southwest Research Institute ("SwRI") did not waive their confidentiality claims, so the agency redacted their claimed CBI. *Id.* ¶¶ 65–66, 70–71. And in its final determination concerning confidentiality as to both entities, EPA concluded that all of the documents at issue were required submissions. *See* Ex. JJ to Sargeant Decl. [Dkt. # 19-7] at 3; Ex. II to Sargeant Decl. [Dkt. # 19-

6] at 3. Thus, the agency contends that all of the redacted information is entitled to confidential treatment because the "release of the records at issue – which Chevron Phillips and SwRI protect from disclosure to both competitors and the public alike – would likely cause substantial competitive harm." Def.'s Mem. at 10–11.

More specifically, EPA insists that the redacted Chevron Phillips information, which mostly consists of non-public pricing information, "would allow competitors to use the information to underbid Chevron Phillips or offer more favorable commercial terms resulting in lost business opportunities to the company." Def.'s Mem. at 11–12. And with regard to SwRI, the agency posits that disclosure of the redacted information would, among other things, allow other entities to gain insight into SwRI's confidential and proprietary information and strategies, take advantage of techniques and approaches developed by SwRI without any cost, and access confidential financial information that would allow competitors to anticipate SwRI's fees and allow competitors to underbid SwRI in the future. *Id.* at 12–14, citing Decl. of Ronald B. Kalmbach [Dkt. # 19-12] ¶¶ 12–17.

Because courts generally defer to the agency's predictive judgments as to substantial competitive harm, *United Techs. Corp.*, 601 F.3d at 563, and because EPA's *Vaughn* index and declarations describe the records and the justifications for nondisclosure with reasonable detail, *Military Audit Project*, 656 F.2d at 738, the Court concludes that EPA's unopposed invocation of FOIA Exemption 4 was appropriate, and it will grant summary judgment in favor of defendant.

## B. Exemption 6

FOIA Exemption 6 bars disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The term "similar files" has been interpreted to include "all information that

applies to a particular individual." *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999). A determination of proper withholding under Exemption 6 requires "weigh[ing] the privacy interest in non-disclosure against the public interest in the release of records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Id.* (internal quotation marks omitted).

The D.C. Circuit has recognized a broad concept of personal privacy, *see, e.g.*, *Horowitz v. Peace Corps*, 428 F.3d 271, 279 (D.C. Cir. 2005) (noting that even innocuous information may qualify for Exemption 6 protection), and the Supreme Court has held that "[t]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on the agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994), quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct" does not meet the purposes of FOIA. *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773.

Defendant released approximately ten records with redactions under Exemption 6, and provided explanations for those redactions in its *Vaughn* index and affidavit. *See, e.g.*, *Vaughn index* at 164; Sargeant Decl. ¶¶ 81–86. The information redacted includes "EPA employees' personal medical information, contact information, and leave plans, and conference call-in information." Sargeant Decl. ¶ 81. EPA argues that the individuals have a privacy interest in all of the redacted information, and that "the harm to the individual as a result of disclosure far outweighs the public interest in such disclosure." Def.'s Mem. at 20.

Because plaintiffs do not challenge any of the redactions under Exemption 6, they have not identified any public interest in the disclosure of this information. Where the court has "been shown no public interest in, and a modest personal privacy interest against disclosure," the court "need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989). Further, the Court finds that the disclosure of this information would not improve the public's understanding of how the government operates. *See Reporters Comm. for Freedom of the Press*, 489 U.S. at 773, 775. Therefore, defendant has justified its unopposed invocation of Exemption 6, and the Court will grant defendant's motion for summary judgment on the Exemption 6 withholdings.

**III.   EPA's withholdings and redactions under Exemption 5 were justified.**

**A.  Legal Standard**

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The exemption encompasses "protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context," including the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). FOIA "places the burden on the agency to sustain the lawfulness of specific

withholdings in litigation." *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9, (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc.*, 449 F.3d at 151, citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultative process.'" *Id.*, quoting *Coastal States Gas Corp.*, 617 F.2d at 866.

For a document to be predecisional, the agency does not have to "point to an agency final decision;" it may "merely establish what deliberative process is involved, and the role [] that the documents at issue played in that process." *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000), citing *Formaldehyde Inst. v. Dep't of Health and Human Servs.*, 889 F.2d 1118, 1123 (D.C. Cir. 1989). In other words, a "'predecisional' document is one 'prepared in order to assist an agency decisionmaker in arriving at his decision.'" *Formaldehyde Inst.*, 889 F.2d at 1122, quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). And with respect to the "deliberative" prong of the test, the exemption "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v.*

*Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982), citing *Montrose Chem. Corp. of Cal. v. Train*, 491 F.2d 63 (D.C. Cir. 1974).

In this case, plaintiffs challenge the withholding or redaction of 198 documents[9] under Exemption 5, arguing that defendant inappropriately applied the deliberative process exemption to documents that reflect "scientific deliberations related to the EPAct Study's design." Pls.' Cross-Mem. at 1; Pls.' Cross-Reply at 5. Both parties have moved for summary judgment on whether Exemption 5 applies to these documents. *See* Def.'s Mem. at 14–18; Pls.' Cross-Mem. at 16–22.

### B.    Exemption 5 Analysis

Plaintiffs have divided their challenge into seven categories of documents, which are identified further in the declaration of James R. Conde. *See* Pls.' Cross-Mem. at 16–18; Conde Decl. ¶¶ 48–60. But, plaintiffs maintain that "the documents identified within groups 1 through 7 all suffer from the same defect:" they reflect deliberations that are technical in nature and that "do not relate to any 'policy-oriented judgment.'" Pls.' Cross-Mem. at 16–18 & n.8, quoting *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). Plaintiffs argue that the privilege "does not protect deliberations about the EPAct Study because it is a fact-finding, not a policymaking, endeavor," *id.* at 18, and that the study's "results are not a protected policy-

---

9       As of the filing of plaintiffs' cross-motion, plaintiffs were challenging the withholding or redaction of 203 records, arguing that they were outside of the scope of Exemption 5's deliberative process privilege. Pls.' Cross-Mem. at 16; Pls.' Cross-Reply at 3. Included in those 203 documents were six records that plaintiffs contended were not "inter-agency" records. Pls.' Cross-Reply at 4. Defendant subsequently released those six records to plaintiffs in full. Pls.' Cross-Reply at 4; *see* Ex. 2 to Sargeant Suppl. Decl. [Dkt. # 28-3]; Def.'s Second SOF ¶ 24; Pls.' Resp. Second SOF ¶ 24. Then defendant produced a set of documents on December 21, 2016, one of which was redacted under Exemption 5. Pls.' Cross-Reply at 4–5; *see* Ex 3 to Sargeant Suppl. Decl. [Dkt. # 28-3] And plaintiffs are now challenging those redactions as outside of the scope of the deliberative process privilege as well. Pls.' Cross-Reply at 5.

making process because the EPAct Study sought only to generate scientific data about the emissions effect of different fuel parameters." Pls.' Cross-Reply at 8–9 (internal quotation marks omitted).

To support their argument, plaintiffs primarily rely on *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992). In *Petroleum*, the plaintiff sought records from the Bureau of Land Management's computer data bank, which contained information on public lands. *Id.* at 1431. The government resisted disclosure, arguing that the records were protected by Exemption 5 because the data bank was a "draft" that was still in development. *Id.* The D.C. Circuit held that the records at issue were not protected by the deliberative process privilege for a number of reasons: (1) the information within the data bank was all publicly available; (2) the information within the documents was not associated with a significant policy decision since the Bureau's mission was "essentially technical and facilitative" in that its "task [was] to organize public records in a more manageable form"; and (3) the materials were unlikely to diminish officials' candor or injure the quality of agency decisions because the materials did not "embody agency judgments" – it was a record-keeping task. *Id.* at 1436–38.

Plaintiffs' almost exclusive reliance on this case is misplaced. First, there is no indication that any of the withheld or redacted information in this case was publicly available, and plaintiffs do not argue this point. Further, EPA's task cannot be compared to a mere effort to organize existing records. The agency was instructed by Congress to create an updated emissions model, which would then be used by various states to implement requirements of the Clean Air Act. *See* Sargeant Decl. ¶¶ 9–10. In order to accomplish this goal, the agency decided to develop the EPAct Study and incorporate its conclusions into the emissions model. *Id.* ¶ 10. EPA conducted the study in partnership with consultants from the energy industry, and as plaintiffs acknowledge,

throughout the process it had to make critical decisions about "what types of fuel blends it could and should test to create a study capable of generating [emissions effect] output." Pls.' Cross-Mem. at 18. Moreover, "EPA defined the scope of the study, estimated costs, determined test procedures, and selected the fuel parameters and vehicles." Sargeant Decl. ¶ 13.

These sorts of decisions, which the agency reached through the exchange of emails and other internal agency records as identified in the *Vaughn* index, are exactly the type of agency judgments that the deliberative process privilege protects. All of these choices were committed to the expertise and judgment of EPA, and the fact that the internal discussions leading up to the final conclusions entailed considerations of scientific principles does not mean that those discussions were not "deliberative." For example, some of the withheld information "reflects the options available for the study and EPA employee evaluation of those options," *Vaughn* index at 157, and these discussions "contributed to the [a]gency's decision-making process both in designing the study's testing and allocating funding." *Id.* Agency personnel engaged in extended discussions and analysis in order to execute the study, and EPA did far more than merely "reorganize and repackage a mass of dispersed public information." *Petroleum*, 976 F.2d at 1438.

Plaintiffs argue that scientific deliberations are not protected because they do not "further Exemption 5's core purpose of enhancing the quality of agency deliberations." Pls.' Cross-Mem. at 19. But this theory makes little sense when an agency's core mission is directly related to and affected by science. *See* ABOUT EPA, https://www.epa.gov/aboutepa/our-mission-and-what-we-do (last visited Sept. 13, 2017) ("EPA's purpose is to ensure that: . . . national efforts to reduce environmental risk are based on the best available scientific information."). Defendant's *Vaughn* index explains that the release of the information withheld would "have a chilling effect on the [a]gency's ability to have open and frank discussions among its staff and with its contractors

concerning budgetary options and study designs," as well as "options or ideas that may not ultimately be selected for [a]gency action." *See e.g.*, *Vaughn* index at 56, 157–58. Further, the *Vaughn* index states that disclosure of these records would undermine "EPA's ability to perform its basic functions," and it "could cause public confusion" if certain "reasons, rationales, and conclusions that were not in fact ultimately the position of the EPA" were released. *Id.*

Therefore, after analyzing the agency's *Vaughn* index and conducting an *in camera* review of a representative sample of documents withheld or redacted under Exemption 5, the Court is satisfied that the documents within each of the seven categories identified by plaintiffs were properly withheld or redacted pursuant to Exemption 5.[10]

## IV. EPA has met its segregability requirement.

After asserting and explaining the use of particular exemptions, an agency must release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), unless the non-exempt portions are "inextricably intertwined with exempt portions" of the record. *Mead Data Cent., Inc.*, 566 F.2d at 260; *see also Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," although "the agency is not required to provide so much detail that the exempt material would effectively be disclosed." *Johnson*, 310 F.3d at 776, citing *Mead Data Cent., Inc.*, 566 F.2d at 261. Just as with the exemption analysis, "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir.

---

10    In their cross-motion, plaintiffs argued that EPA unlawfully invoked Exemption 5 to withhold or redact several records containing information it shared with the petroleum industry. Pls.' Cross-Mem. at 22–27. This issue is now moot because defendant produced the six documents at issue. *See* Def.'s Reply at 3–4; Pls.' Cross-Reply at 4–5.

2007), citing *Boyd v. Criminal Div. of DOJ*, 475 F.2d 381, 391 (D.C. Cir. 2007), and "[a] court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008), citing *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996). A district court must make an express finding on segregability. *Id.* at 60, citing *Morley*, 508 F.3d at 1123.

Plaintiffs argue that "EPA has offered no evidence that it fulfilled its obligation to produce all reasonably segregable responsive information as to all records challenged by [p]laintiffs." Pls.' Cross-Mem. at 33. They insist that defendant's *Vaughn* index contains nothing more than "boilerplate explanations of its segregation determination" and "unsophisticated parroting of FOIA's statutory language." *Id.* at 33–34 (internal citation omitted).

EPA has provided a comprehensive, 277 page, *Vaughn* index, as well as a 25-page supplemental *Vaughn* index, that describe each document withheld and the exemption under which it was withheld, and both state that no additional reasonably segregable information could be released. *See generally Vaughn* index; Suppl. *Vaughn* index. In addition, EPA's declarant avers that the agency "conducted a line-by-line review of each record responsive to the request for segregability of non-exempt information," "records were redacted for exempt material and the reasonably segregable non-exempt portions released," and agency reviewers "determined that where a record was withheld in full, no meaningful portion could reasonably be released." Sargeant Decl. ¶ 42. Further, the declarant justifies defendant's inability to redact additional information from these documents by asserting that disclosing that information would still reveal internal agency analysis and decisions. *Id.* ¶¶ 43–45.

Although each side accuses the other of "cherry-picking" certain documents in its favor to prove its point, *see* Pls.' Cross-Mem. at 34–36; Def.'s Reply at 22, a review of both *Vaughn* indexes reveals that defendant provided a segregability explanation for every document, and it made a diligent effort to individualize the segregation determinations. *See, e.g.*, *Vaughn* index at 3 ("There is no additional reasonably segregable information *in this briefing* beyond what has been produced. Redactions were only made to two pages of the 11 page briefing and to the extent there are facts contained in the two withheld pages of this briefing, the selection of those facts are an integral part of the deliberations in selecting final program options.") (emphasis added). Even if some of the agency's explanations are similar, if not identical, that finding does not preclude summary judgment because sometimes "categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons." *Judicial Watch, Inc.*, 449 F.3d at 147. Moreover, the D.C. Circuit has recognized that "[t]here are only so many ways the [agency] could have claimed Exemptions," and that "[a]s long as it links the statutory language to the withheld documents, the agency may even 'parrot []' the language of the statute." *Id.*, quoting *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1138 (D.C. Cir. 2001).

Therefore, considering all of the segregation determinations in combination with defendant's declaration, the Court is satisfied that the agency has met its segregability requirement. *See Juarez*, 518 F.3d at 61 (finding a "page-by-page" review and averments in a declaration that each piece of information withheld could not be reasonably segregated to be sufficient for defendant to meet segregability requirement); *Johnson*, 310 F.3d at 776 (concluding that a "comprehensive *Vaughn* index, describing each document withheld, as well as the exemption under which it was withheld," supplemented by an affidavit indicating that an agency official conducted a review of each document and determined that the documents did not contain

segregable information was sufficient to fulfill the agency's obligation). Further, the Court's *in camera* review of the provided documents confirms this conclusion. So, the Court will grant defendant's motion for summary judgment on the issue of segregability.

## CONCLUSION

For the foregoing reasons, the Court concludes that EPA's declaration does not describe an adequate search in response to plaintiffs' FOIA request. Therefore, defendant's motion for summary judgment will be DENIED IN PART, and the Court will remand the case to the agency. The agency is instructed to conduct a further search for responsive records, to provide a more detailed justification for the adequacy of the searches, and to release any reasonably segregable non-exempt material to plaintiffs consistent with FOIA. With respect to the documents EPA redacted or withheld pursuant to FOIA Exemptions 4, 5, or 6, the Court finds that EPA properly invoked the exemptions and that it met its segregability requirement. Thus, defendant's motion for summary judgment will be GRANTED IN PART, and plaintiffs' motion for partial summary judgment will be DENIED.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: September 25, 2017